68 F.3d 477
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Donald E. HEDRICK, Plaintiff,
v.
COMPTROLLER OF the CURRENCY, Washington D.C.
Defendant-Appellee; Appeal of Richards.
 No. 94-3713.
 United States Court of Appeals, Seventh Circuit.
 Argued June 14, 1995.
Decided Oct. 12, 1995.
 
 Before COFFEY, MANION and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Dean E. Richards, an attorney who represented Donald E. Hedrick in his suit against the Office of the Comptroller of the Currency ("OCC"), appeals from the district court's award of attorneys' fees as sanctions under Federal Rule of Civil Procedure 11. We affirm.
 
 
 2
 Hedrick, Chairman of the Board of Rushville National Bank of Rushville, Indiana, ("Rushville"), owned 88% of Hoosier Bancorp of Indiana, Inc. ("Hoosier Bancorp"), which is a holding company with 89% of Rushville's stock. Hoosier Bancorp had pledged its Rushville stock as part of the collateral for a promissory note, which over time had come into the possession of Liberty National Bank and Trust of Louisville, Tennessee ("Liberty National"). Hedrick sued the OCC on the grounds that it had prohibited him from selling his shares in Hoosier Bancorp.
 
 
 3
 On November 12, 1992, in Washington, D.C., just before Hedrick attended a meeting between the OCC and Rushville's Board of Directors, he was pulled aside by OCC staff for a private meeting. During this private meeting, OCC staff served him with an order suspending him from participating in Rushville's affairs and a "Notice of Intention to Prohibit Further Participation," which notified him of administrative proceedings to prohibit him from participating in any bank or other institution governed by 12 U.S.C. Sec. 1818 (1988 & Supp.1989). According to Hedrick, Jane Rasmussen, a Senior Attorney for the enforcement division of the OCC, told him that attempting to sell his stock in Hoosier Bancorp would violate the suspension order. Liberty National interpreted Hedrick's suspension as grounds for declaring the promissory note in default. It notified Hoosier Bancorp on November 20, 1992, that it intended to sell the pledged Rushville stock at or after the end of the month.
 
 
 4
 On November 23, 1992, Hedrick filed a suit to seek a partial stay of the OCC's suspension order, and two days later he filed an amended complaint. See Hedrick v. Office of the Comptroller of the Currency, No. IP92-1635 C (S.D.Ind. Nov. 23, 1992) (complaint). In a letter dated December 4, 1992, Fred Finke informed Richards that the OCC approved "the transfer or attempted transfer by Mr. Donald E. Hedrick of all or part of the voting rights of his shares of Rushville National Bank and/or Hoosier Bancorp." He added that Hedrick must provide twenty days advance notice "of any transfer of all or part of such shares."
 
 
 5
 On December 9, 1992, Hedrick filed the suit for a declaratory judgment that underlies the sanctions dispute in this appeal. He sought a declaratory judgment holding that the OCC acted beyond its authority under 12 U.S.C. Sec. 1818 by restricting his ability to sell his stock. In the alternative, if Sec. 1818 authorized such actions, he sought a declaratory judgment holding that statute was unconstitutional because it deprived him of his Fifth Amendment rights to due process and to protection against the taking of his property without just compensation.
 
 
 6
 Prior to the eventual dismissal of the underlying suit, counsel for the parties submitted various affidavits in relation to the OCC's motion to dismiss or for summary judgment. On February 11, 1993, the OCC submitted this motion, in which it stated that "the OCC has never prohibited plaintiff from selling or otherwise divesting himself of his interest in [Hoosier Bancorp], subject to OCC approval...." The OCC argued that the court lacked jurisdiction,[1] that Hedrick's claims lacked merit, and that the suit was moot because after Rasmussen's alleged statements at the meeting, the OCC had repeatedly informed Hedrick through his counsel that he could sell his stock. In addition to other materials, Robin Rosenbaum, the OCC's trial counsel from the Department of Justice, submitted in support of this motion the first of two affidavits by her. Richards later filed Hedrick's response to the OCC's motion to dismiss or for summary judgment, which included Richards' own affidavit. In this affidavit, he stated that Rasmussen had flatly indicated at the November 12 meeting that Hedrick could not sell his stock. On April 14, 1993, two of the OCC's counsel, Rasmussen and Gerald Sexton, withdrew their appearances before the district court. At the same time, the OCC filed a reply to Hedrick's response, and it supported the reply with affidavits from Rasmussen and Sexton and with Rosenbaum's second affidavit. Rasmussen stated in her affidavit that she did not tell Hedrick that he could not sell his stock, but only that he could not sell, transfer or exercise voting rights in that stock.
 
 
 7
 In these affidavits, counsel for both sides described their interaction during the pendency of Hedrick's suit. In his affidavit, Richards stated that on December 11, 1992, he discussed the problem of being able to sell only voting rights with Rasmussen. On December 18, 1992, Rushville was declared insolvent, and a receiver was appointed. According to Richards' affidavit, this act rendered the stock worthless. After the bank was closed, assets were sold off. On December 23, 1992, after talking to Richards, Rosenbaum sent him confirmation that "Mr. Hedrick may transfer, sell, or otherwise dispose of his interest in Hoosier Bancorp, as well as transfer his voting rights" in compliance with Finke's letter. In his affidavit, Richards stated that during his conversation with Rosenbaum, he complained that the stock was now worthless, Hedrick's ability to sell or transfer it meant little or nothing. According to Rosenbaum's second affidavit, she never discussed the alleged worthlessness of the stock until February 4, 1993. Rosenbaum stated in her first affidavit that she talked with Richards again on January 5, 1993, to see if he would dismiss his suits for declaratory judgment and for a partial stay of the suspension order. According to that affidavit, Richards told her that he believed that her December 23 letter was not binding on the OCC. Therefore, on January 5, Rasmussen sent him a letter confirming the OCC's position. In his affidavit, Richards denied that he believed the letter was not binding, but rather alleged that he wanted a confirmation letter for the purposes of the suit.
 
 
 8
 On May 21, 1993, after receiving these various affidavits, the district court dismissed the case as moot. The court held that the motion for summary judgment constituted a judicial admission that Hedrick could sell his stock. In addition, it noted that the correspondence between the attorneys on December 4, 1992 and thereafter was therefore immaterial. On May 25 and 27, 1993, respectively, the clerk of court docketed the district court's orders dismissing the case as moot and providing a separate order of judgment in compliance with Fed.R.Civ.P. 58.
 
 
 9
 During the course of this case, the OCC cited three documents in which Richards allegedly violated Rule 11. The first one was Hedrick's motion to disqualify opposing counsel or to strike their affidavits. The motion invoked the "advocate-witness" rule, Indiana Rule of Professional Conduct 3.7, which the district court incorporated into its local rules. See R. Disciplinary Enforcement IV.B, in R. U.S.Dist.Ct.S.D.Ind. Ironically, the plaintiff's course of action for which the OCC sought sanctions paralleled the OCC's own behavior. Richards did not file an affidavit until after the OCC had used an affidavit of counsel to support its dispositive motion, and he did not file the motion to disqualify opposing counsel or to strike their affidavits until after the OCC had filed a motion seeking the same relief against him. The OCC distinguishes its own conduct on the grounds that Rasmussen and Sexton withdrew at the time that they filed affidavits and that Rosenbaum's affidavits did not contain material facts.
 
 
 10
 The OCC also sought sanctions against Richards for filing Hedrick's response to the OCC's motion to disqualify, which Richards submitted with Hedrick's motion to disqualify. In the response, Richards stated on Hedrick's behalf that counsel's affidavit was only filed to controvert the OCC's affidavits (although we note that only Rosenbaum had filed an affidavit at that time), and that Hedrick had no intent of calling Richards as a witness at trial. Further, Richards contended that Rule 3.7 did not apply because his counter-affidavit "does not constitute testimony at 'trial' as set out in Rule 3.7."
 
 
 11
 The third document for which the OCC requested sanctions was Hedrick's "Motion for Order Compelling Discovery and for Sanctions for Failure to Appear at Deposition [FRCP 37(A)(d) (sic) ]." On April 19 and 20, 1993, Richards served on Rosenbaum by fax and mail six sets of documents for depositions scheduled from April 26, 1993 to April 28, 1993. Each set included a "Notice to Take Deposition," a "Motion to Produce Documents at Deposition," and a subpoena requesting the person's presence and the production documents. The subpoenas named Fred Finke, Deputy Comptroller for Special Supervision at the OCC, Ronald Schneck, Director of Special Supervision at the OCC, Michelle Collins, a bank examiner for the OCC, Rasmussen, Sexton, and Rosenbaum. Rosenbaum informed Richards in advance of the meetings that the individuals would not attend because the subpoenas were facially defective for a variety of reasons. On May 24, 1993, three days after the date of the court order and judgment dismissing the case (but one day and three days before the order and the judgment respectively were entered onto the district court's docket), Richards filed the motion on Hedrick's behalf for sanctions for failure to appear. On June 9, 1993, the OCC moved for sanctions against Richards for filing Hedrick's motion for sanctions for failure to appear because the motion was frivolous.
 
 
 12
 Although the district court declined to award sanctions for the second document, Hedrick's response to the motion to disqualify, it held that the other two items were sanctionable. After the OCC submitted new affidavits (save one) to support the partial award of fees, the district court ordered Richards to pay $4,536.42 for these two violations. Richards appeals from this order.
 
 
 13
 Although Rule 11 has since been amended, the 1983 version of Rule 11 applies in this case. On December 1, 1993, the new version of Rule 11 became effective. "[I]t governs 'all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings in civil cases then pending.' " Land v. Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Health & Welfare Fund, 25 F.3d 509, 516 (7th Cir.1994) (quoting 146 F.R.D. 404 (Apr. 22, 1993) (Supreme Court order amending Federal Rules of Civil Procedure)). Richards filed the two documents before December 1, 1993, and the OCC also requested Rule 11 sanctions before that date. However, the court entered its orders imposing liability and declaring the amount of fees awarded after the effective date. Even so, it would not be "just and practicable" to apply the 1993 amendments to these pending motions in this case.[2]
 
 
 14
 The 1983 version of Rule 11 permits sanctions, including the award of attorneys' fees, against the attorney or party that signs a pleading, motion or other paper "that, after reasonable inquiry, is not well grounded in fact and is not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Burda v. M. Ecker Co., 2 F.3d 769, 773 (7th Cir.1993). Filing a frivolous document without having performed the required inquiry may result in sanctions, even if done in good faith. Mars Steel Corp. v. Continental Bank N.A., 880 F.2d 928, 932 (7th Cir.1989). Conversely, Rule 11 may also be violated when, even though carefully investigated and well based in fact and law, "[p]arties and/or their attorneys ... bring legal action for any improper purpose, such as to harass or needlessly increase the cost of litigation." Burda, 2 F.3d at 773-74 (citation omitted); Mars Steel Corp., 880 F.2d at 931-32. We review the district court's decision to award sanctions for an abuse of discretion. Bisciglia v. Kenosha Unified School Dist. No. 1, 45 F.3d 223, 226 (7th Cir.1995). If the district court based its Rule 11 sanctions on findings that were clearly erroneous or rulings that were contrary to law, we may find that the district court abused its discretion. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 400-01, 405 (1990).
 
 A. Procedural Issues
 
 15
 Richards raises several procedural arguments against the award of sanctions. First, he claims that the defendant failed to timely file its motion for Rule 11 sanctions. Richards apparently waived the issue by not raising it in the district court. See Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc., 991 F.2d 1249, 1258 (7th Cir.1993). In any event, the OCC filed its motion for sanctions within a sufficiently reasonable time after both the discovery of the alleged violations and the entry of judgment by the court. Kaplan v. Zenner, 956 F.2d 149, 151 (7th Cir.1992) (holding that Rule 11 motions must be filed within a reasonable time after discovery of the violation and no later than the outer limits set by Szabo Food Serv., Inc. v. Canteen Corp., 823 F.2d 1073, 1080 (7th Cir.1987), cert. dismissed, 485 U.S. 901 (1988)); see Burda, 2 F.3d at 774. Furthermore, despite Richards' contention to the contrary, dismissal of the underlying case alone does not moot the question of Rule 11 sanctions for prior misconduct.
 
 
 16
 Richards also claims that the court could not sanction him for filing the motion to compel discovery and for sanctions for failure to appear because it had already ordered the dismissal of the case. First, we note that the court still had jurisdiction over the underlying case. At the time that Richards the motion for discovery sanctions on Hedrick's behalf, the court's order and judgment had not yet been docketed and no notice of appeal had been filed. Fed.R.Civ.P. 58 ("A judgment is effective only ... when entered as provided in Rule 79(a)."); Fed.R.Civ.P. 79(a). Second, if the court denied the motion on the grounds of untimeliness,[3] the motion's untimeliness would not excuse its frivolity under Rule 11.
 
 
 17
 Finally, Richards claims that the OCC's Rule 11 motion needed to be filed in a separate document. The OCC filed a Rule 11 motion, which requested sanctions for three separate filings, and a combined supporting memorandum and response to Hedrick's motion for sanctions for failure to appear. Amended Rule 11(c)(1)(A) (1993) states that "[a] motion for sanctions under this rule shall be made separately from other motions or requests...." However, the new version of Rule 11 does not apply in this case, and therefore we decline to address whether the OCC's motion complied with it. The older Rule 11 states that sanctions may be granted upon motion, but the rule does not contain a similar separate document provision. The OCC's Rule 11 motion complied with the older Rule 11,[4] and the fact that the OCC combined the accompanying supporting memorandum with another document does not alter our conclusion.
 
 B. Plaintiff's Motion To Disqualify
 
 18
 The district court did not abuse its discretion by awarding sanctions for the filing of Hedrick's motion to disqualify or to strike affidavits of counsel on the grounds that the motion to disqualify was filed for the improper purpose of harassment. Therefore, we need not address the issue of frivolity. Although the motion's parenthetical dig at the OCC's own behavior ("[w]hat's good for the goose is good for the gander") provides some evidence of animosity, we do not base our determination merely on his use of this cliche. There is other evidence in the record that the motion was filed to harass opposing counsel in retaliation. In his supporting memorandum, Richards states that "[t]he reason this Motion is being filed is that the Government has filed a similar Motion to Disqualify Mr. Richards...." Also, aspects of the substance of the motion, which may also tend to show frivolity, undermine his assertion on appeal that it was a reasonable attempt to correct the OCC's own misconduct. First, Richards, on behalf of Hedrick, sought to disqualify two attorneys who had withdrawn from the litigation[5] and a third attorney who had not even appeared in this suit. Second, his reliance on Rule 3.7 is at least somewhat inconsistent with his simultaneous response to the OCC's motion to disqualify or to strike his affidavit, in which he contended that his counter-affidavit did not violate Rule 3.7 because it did not constitute testimony at "trial." In sum, the district court did not abuse its discretion.
 
 
 19
 Although we decline to address whether Hedrick's motion to disqualify opposing counsel was frivolous, we do view the OCC's actions with some concern. Its decision to rely on counsel to supply affidavits triggered some of the events in this case. Once the OCC filed Rosenbaum's initial affidavit, Richards, Hedrick's sole attorney of record in this particular suit against the OCC, was faced with the need to controvert her allegations (although theoretically he could have attempted to invoke Rule 3.7). Then the OCC sought to disqualify Richards for conduct that it not only appeared to engage in, but that it appeared to engage in first.[6] However, we need not decide whether the district court was correct in finding that Rosenbaum's initial affidavit did not address genuine issues of material fact. See Ind.R.Prof.Conduct 3.7(a) ("A lawyer shall not act as advocate at trial in which the lawyer is likely to be a necessary witness except where: (1) the testimony relates to an uncontested issue....").
 
 C. Motion for Sanctions
 
 20
 The district court found that the motion for sanctions for failure to appear, which it distinguished from the motion to compel discovery component of Richard's combined filing, was frivolous because Richards had filed sanctions for non-compliance with the subpoenas in spite of the abundant notice that the subpoenas were defective. The court found that the subpoenas violated Rule 45 because (1) all but one of the subpoenas did not issue from the district in which the deposition was to be taken, (2) they were all improperly served, (3) Richards sent them with insufficient advance notice, and (4) he failed to tender money for expenses.
 
 
 21
 Richards contends that Hedrick's motion for sanctions for failure to appear only sought sanctions for future violations. He argues that it only requested sanctions if the parties failed to comply with the court's order to compel discovery, assuming that the district court would grant such an order. However, the motion, with its assorted citations to rules of procedure, does contain a request for present sanctions. It states:
 
 
 22
 The Plaintiff respectfully requests from this Court, pursuant to Fed.R.Civ.P. 37(a), an order compelling the Government witnesses to appear and subject themselves to interrogation pursuant to Fed.R.Civ.P. 30(g), requests the granting of this motion for sanctions pursuant to Fed.R.Civ.P. 37(b), and for attorney fees and expenses for compelling said Defendants to attend said deposition.
 
 
 23
 (Emphasis added.)
 
 
 24
 For the first time on appeal, Richards also claims that the district court erred because the motion was not frivolous regardless of whether the subpoenas were in compliance with Rule 45. He contends that service of notices of deposition on a party sufficed to compel the attendance of the witnesses. More precisely, Hedrick could seek sanctions under Fed.R.Civ.P. 37(d), which Richards both incorrectly cites and misquotes on appeal. If Hedrick served proper notice on "a party or an officer, director or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a)" and that person or party failed to appear, he could request either sanctions under Fed.R.Civ.P. 37(b)(2)(A)-(C) or costs and fees caused by the failure to appear, or both. Fed.R.Civ.P. 37(d). The OCC contends that he failed to make this argument in the district court and has therefore waived it. We agree.
 
 D. Amount of Sanctions Awarded
 
 25
 Richards also questions the actual amount of fees awarded. However, as the OCC points out, he did not raise this issue in the district court and therefore may not do so on appeal. Cf. Jurcev v. Central Community Hosp., 7 F.3d 618, 628 n. 4 (7th Cir.1993) (holding that party waived claim that district court erred by awarding costs without being provided with supporting affidavit pursuant to 28 U.S.C. Sec. 1924), cert. denied, 114 S.Ct. 1830 (1994); In re Establishment Inspection of Microcosm, 951 F.2d 121, 126 (7th Cir.1991) (holding that party could not challenge for first time on appeal amount of fees awarded as sanction for civil contempt), cert. denied, 113 S.Ct. 55 (1992).
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 We need not address this issue because a lack of subject matter jurisdiction over the underlying suit would not render the Rule 11 sanctions invalid in this case. Willy v. Coastal Corp., 503 U.S. 131, 139 (1992)
 
 
 [2]
 See id. (declining to apply 1993 amendments, which became effective during pendency of appeal); Pantry Queen Foods, Inc. v. Lifschultz Fast Freight, Inc., 809 F.2d 451, 454 (7th Cir.1987) (holding in case in which effective date of 1983 amendments came after date of allegedly sanctionable filing of documents and preceded date of sanctions that it would not be "just and practicable" to apply 1983 amendments)
 
 
 [3]
 Cf. Brandt v. Vulcan, Inc., 30 F.3d 752, 756 (7th Cir.1994) (holding that motion for sanctions within reasonable time and citing Butler v. Pettigrew, 409 F.2d 1205, 1207 (7th Cir.1969), for proposition that party that waits until after judgment to request sanctions for a pretrial discovery violation under Rule 37(b) and (d) waives its rights); Airtex Corp. v. Shelley Radiant Ceiling Co., 536 F.2d 145, 155 (7th Cir.1976) (holding that party that sought Rule 37(d) sanctions after trial, but before judgment did not waive rights under circumstances of case)
 
 
 [4]
 Flanagan v. Shively, 783 F.Supp. 922, 927 n. 4 (M.D.Pa.1992); Gates v. State Farm General Ins. Co., 740 F.Supp. 1237, 1243 n. 1 (S.D.Miss.1990); cf. also Hadges v. Yonkers Racing Corp., 48 F.3d 1320, 1327-28 (2d Cir.1995) (discussing "revised procedural requirements" of new Rule 11, including need to move for Rule 11 sanctions separately from other motions or requests). But see Hansboro v. Northwood Nursing Home, Inc., 832 F.Supp. 248, 252 (N.D.Ind.1993) (requiring Rule 11 motion to be made separately from motion for summary judgment)
 
 
 [5]
 On appeal, Richards claims for the first time that these withdrawals were ineffective because the court did not formally recognize them. However, the district court found that the withdrawals had been effective when filed. The district court's interpretation of its own local rules is due considerable deference. Waldridge v. American Hoechst Corp., 24 F.3d 918, 923 n. 4 (7th Cir.1994); see U.S.Dist.Ct.R.S.D.Ind. 83.7 (eff. date Feb. 1, 1992) (stating that need to file petition to permit withdrawal is waived "when accompanied by the appearance of other counsel."). Rosenbaum continued to maintain her appearance throughout the litigation after these two attorneys withdrew
 
 
 [6]
 Even so, controverting Rosenbaum's affidavit does not justify Richards' submission of an affidavit detailing the statements made by the OCC staff at the November 12 meeting. He was not the only person present