**In re CHICAGO MIDWEST DONUT, INC., Debtor.**

**Bankruptcy No. 87 B 9691.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Jan. 8, 1988.

Leroy G. Inskeep, Philip V. Martino, Rudnick & Wolf, Chicago, Ill., for Mister Donut of America, Inc.

Gary G. Tucker, Chicago, Ill., for debtor.

MEMORANDUM OPINION AND ORDER ON MISTER DONUTS' MOTION TO IMPOSE SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11, BANKRUPTCY RULE 9011, and 28 U.S.C. § 1927

JACK B. SCHMETTERER, Bankruptcy Judge.

This cause comes before the Court on the motion of Mister Donut of America, Inc.

("Mister Donut") to impose sanctions, including attorneys' fees and costs, pursuant to Rule 11, F.R.Civ.P., Bankr.Rule 9011, and 28 U.S.C. § 1927. The Motion lies against Chicago Midwest Donut, Inc. ("Debtor") and against its attorney. For reasons stated below, the Motion is allowed against Debtor and its counsel, in the amount of $1,755.

### Relevant Facts and Pleadings

On July 1, 1987, Debtor filed this bankruptcy proceeding under Chapter 11 of the Bankruptcy Code. Following events related herein, the proceeding was converted to one under Chapter 7.

On July 28, 1987, Mister Donut filed a Motion to modify the automatic stay. It asserted that (1) two subleases (Bloomington, Pekin) and three franchise agreements (Bloomington, Pekin, Springfield) were not assignable to Debtor; (2) Debtor failed to make the payments required under those agreements; and (3) Debtor failed to offer Mister Donut adequate protection either for use of demised premises or for use of Mister Donut's franchise and trademarks. Mister Donut sought stay modification to allow four pending lawsuits involving the subleases and franchise agreements to continue with Debtor as a defendant in each.

Debtor was ordered by this Court to answer that motion. Debtor answered the Mister Donut motion with an argument, including the suggestion that Debtor would be unable to generate revenue if the stay were modified. Mister Donut replied to Debtor's Answer pointing out that Debtor had failed to deny any factual allegations and therefore was deemed to have admitted all factual allegations in the Motion under Rule 8(d) F.R.Civ.P., and Local District Court Rule 9(a) (adopted by the Bankruptcy Court).

On September 1, 1987, this Court held a preliminary hearing under Bankruptcy Code § 362 on the motion of Mister Donut to modify stay. Debtor's counsel acknowledged that his Answer had not responded to each allegation of the Motion, and in justification said that he prepared it without having the Motion available. Efforts by Debtor's counsel to assert unpleaded affirmative matters orally were not permitted by the Court. Rather, the Court ruled at the September 1st hearing that Mister Donut's well pleaded factual allegations were deemed admitted, Debtor having failed to answer as ordered. The stay was then modified to allow the Bloomington, Pekin I, and Pekin II lawsuits and any appeals therefrom to proceed with the Debtor added as a defendant in those suits.

Debtor filed a Motion the next day to Reconsider and Vacate this Court's Order modifying the automatic stay. On September 2, 1987, Debtor presented an Emergency Motion for leave to file his Amended Answer and Affirmative Defenses instanter. This was permitted by the Court and the same were filed on September 2, 1987.

The Amended Answer, in paragraph 14, admitted that Debtor did not satisfy certain assignment requirements contained in the franchise agreements between Debtor's assignor and Mister Donut. However, in paragraph 16, Debtor denied that it failed (a) to comply with those provisions, and (b) to make the post assignment and post petition royalty and advertising contributions required thereunder. Finally, in paragraph 17, Debtor denied that it failed to afford adequate protection to Mister Donut, inferring that adequte protection existed because Debtor was making post petition payments.

Debtor also pleaded affirmative defenses that (1) Mister Donut accepted post petition "rent" from Debtor, which constituted an acceptance of the assignment of the subleases to Debtor, and (2) the assignment to Debtor was proper.

At the September 2nd hearing on motion to reconsider and vacate, Mr. Tucker stated that he called his client immediately after the September 1st hearing and learned that Debtor's "rent" check had cleared. Based on the new pleadings and this representation, and over the objection of Mister Donut's counsel, the Court granted the motion to reconsider and vacate. Debtor was allowed to file its Amended Answer and affirmative defenses instanter.

A new preliminary hearing was then held on the motion to modify stay. It was held that very day because the 30–day period required for preliminary hearing under § 362 was about to expire. At the September 2nd hearing, Mister Donut advanced seven arguments in support of its position, namely: (1) the refusal to accept the proposed assignment was not unreasonable; (2) accepting a post petition payment for use of the premises is not a waiver; (3) the Bloomington and Pekin subleases terminated by operation of law on August 31, 1987; (4) Debtor must immediately surrender possession of the leased premises to Mister Donut; (5) the Bloomington and Pekin subleases were terminated on January 25, 1987, before the purported assignment to Debtor; (6) the franchise agreements and subleases for Bloomington and Pekin were so interwined that termination of the subleases terminated the franchise agreements; and (7) Debtor had failed to make any showing of adequate protection, or ability to promptly cure its defaults, or ability to perform in the future.

In response, Debtor argued *inter alia* that by accepting the post petition check, Mister Donut waived its objection to the purposed assignment of the subleases to Debtor.

During the course of the argument, Mr. Tucker admitted that Debtor had made no attempt to assume the subleases and that he did not know whether Debtor's post petition check to Mister Donut included royalties and advertising contributions required under the franchise agreements. Further, Mr. Tucker acknowledged the inconsistent positions Debtor had taken in the Amended Answer between paragraph 14 (admitting non-compliance with the assignment provisions of the franchise agreements) and paragraph 16 (denying a failure to comply with those same provisions).

The Court then found under Bankruptcy Law that Mister Donut's acceptance of any post petition use and occupancy payments was not a waiver of its objection to the assignments; that the subleases terminated as a matter of Bankruptcy law on August 31, 1987, because Debtor had made no attempt before that date to assume the leases; and that termination of the Bloomington and Pekin subleases terminated the franchise agreements for those locations. The Court did not decide whether Mister Donut reasonably withheld its consent to the purported assignments. Based on findings made, the Court ordered the automatic stay modified to allow the pending Pekin and Bloomington lawsuits to proceed. The Court also found, however, that Debtor's Amended Answer denying a default and claiming that it was making post-petition royalty and advertising payments for the Springfield location raised a fact question that justified a final hearing and continued stay as to that location. Consequently, the court set a final hearing date on September 9th as to the Springfield location, and entered a Preliminary Pretrial Order.

It subsequently was reported that the Debtor's check that its counsel had referred to had been returned by the bank for insufficient funds.

On September 9, 1987, at the third hearing on this matter, Debtor sought and was granted leave to file a Second Amended Answer to the Motion to Modify the Automatic Stay. Debtor's counsel admitted therein that (1) franchise fees were not paid for under the Springfield franchise, just as Mister Donut had alleged; (2) when the original Answer was filed, neither Debtor nor its counsel knew the exact amount of payment tendered to Mister Donut for August 1987 payment; and (3) counsel learned that the Debtor's check had omitted franchise fees only after filing his Amended Answer. The Second Amended Answer admitted the allegations of paragraph 16 of the Motion that Debtor was in default of the agreement in several ways both prepetition and post petition. At the hearing on the motion for leave to file that Second Amended Answer, Mr. Tucker orally also admitted paragraph 17 of the Mister Donut motion which had alleged lack of adequate protection. He acknowledged that the automatic stay should be modified with respect to the Springfield location, and the Court entered such an order.

On September 18, 1987, counsel for Mister Donut wrote to Debtor's counsel requesting fees and expenses under Rule 11 F.R.Civ.P., Bankruptcy Rule 9011, and 28 U.S.C. § 1927. Neither Debtor nor its counsel responded thereto. Consequently, this motion followed.

### The Instant Motion

Mister Donut first asks sanctions with respect to Debtor's initial Answer to the Motion to modify automatic stay. It contends that Debtor's counsel neglected to review the appropriate rules and law to ascertain that allegations of motions not denied are deemed admitted. That caused the first hearing to be held without proper answer being filed, and lead to a second and then a third hearing once answers and denials were filed.

Mister Donut also argues that sanctions are appropriate with respect to Debtor's Motion to Vacate and Reconsider because: (1) the truth as to all facts pleaded therein were available to counsel upon reasonable inquiry; (2) Debtor's counsel orally represented that Debtor's post-petition check "cleared" when it in fact was returned for insufficient funds; and (3) the subleases had terminated by law on August 31, 1987 thereby rendering Debtors continued opposition to the original Motion legally indefensible as to the Pekin and Bloomington leases.

Mister Donut argues that sanctions are also appropriate with respect to the Amended Answer because Debtor's counsel did not perform the necessary factual and legal research before filing that Answer. It contends that if Debtor's counsel had properly investigated or inquired before pleading he would have discovered that (1) Debtor lacked funds to cover its remittance; (2) the check covered only rent; (3) Debtor never attempted to cure pre-assignment defaults; (4) Debtor never made post assignment royalty payments to Debtor; and (5) Debtor neglected to send post-petition payments to Mister Donut for continued use of its trademarks.

Finally, Mister Donut argues that if Debtor's counsel had performed the necessary legal research he would have discovered that (1) the Bankruptcy Code allows a landlord to accept use and occupancy payments without prejudicing its pre-bankruptcy rights; (2) subleases had to be assumed by August 31, 1987 or were deemed rejected; (3) Bloomington and Pekin subleases and franchise agreements were so intertwined that rejection of subleases caused a rejection of franchise agreements; (4) Debtor's rights under Bloomington and Pekin subleases and franchises both terminated on August 31, 1987; and (5) Debtor did not and could not meet its burden of proving adequate protection.

Debtor's counsel responds that he knew only that Debtor made payments of an unspecified amount to Mister Donut. Debtor's counsel claims he had reason to believe the amount paid to Mister Donut included franchise fees and rent, and that it served to demonstrate adequate protection to Mister Donut. He believed that based on a conversation with his client. With regard to acceptance by Mister Donut of the post-petition rent payment, he had asserted that act to constitute acceptance of assignment of subleases to Debtor because he then understood Illinois state law to control that question over Federal Bankruptcy law. Finally, counsel for Debtor asserts that pleadings reasonably believed to be true are not violative of Rule 11, F.R.Civ.P. He claims that his Answer was drafted in good faith, was reasonably believed to be accurate, and did not contain frivolous allegations. Hence, he argues that Mister Donut has abused Rule 11 and should be sanctioned, not Debtor or its counsel.

For reasons stated below, the Motion of Mister Donut is granted against Debtor and its counsel.

### DISCUSSION

Rule 11 F.R.Civ.P. provides:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name.... The signature of an attorney or party constitutes a certificate by the

signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Bankruptcy Rule 9011 is analogous to Rule 11 and imposes sanctions under the same circumstances as Rule 11.

This Court has jurisdiction to impose sanctions under those rules and 28 U.S.C. § 1927. *In re TCI, Ltd.*, 769 F.2d 441, 448 (7th Cir.1985).

■ Present Rule 11 represents a significant change from the pre–1983 version with regard to the standard for deciding whether sanctions are appropriate. *Brown v. National Bd. of Medical Examiners*, 800 F.2d 168, 171 (7th Cir.1986). Prior to the 1983 amendment, Rule 11 was interpreted as requiring a showing of subjective bad faith on the part of counsel before fees or costs were imposed against counsel. *Indianapolis Colts v. Mayor and City Council of Baltimore*, 775 F.2d 177, 181 (7th Cir.1985). However, the current standard for imposing sanctions under Rule 11 is no longer a determination of subjective bad faith, but rather is an objective question of reasonableness under the circumstances. *Dreis & Krump Mfg. Co. v. International*

*Ass'n of Machinists*, 802 F.2d 247, 255 (7th Cir.1986). *See also Brown*, 800 F.2d at 171; *Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir.), *cert. denied*, 479 U.S. ——, 107 S.Ct. 181, 93 L.Ed.2d 116 (1986); *Indianapolis Colts*, 775 F.2d at 181; *Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 205 (7th Cir.1985); *In re TCI, Ltd.*, 769 F.2d 441, 445–46 (7th Cir.1985).

Under Rule 11, sanctions are now intended to be a more integral aspect of the judicial process. *Brown*, 800 F.2d at 173. The new language added to the Rule in 1983 was intended to reduce the reluctance of courts to impose sanctions by emphasizing the responsibilities of the attorney and reinforcing those obligations by the imposition of sanctions. *Rodgers*, 771 F.2d at 205. Recently, the Seventh Circuit has shown no reluctance to impose sanctions where necessary. As determined in *Dreis*, 802 F.2d at 255, mounting federal caseloads and growing public dissatisfaction with the costs and delays of litigation warrant imposition of sanctions on persons and firms that abuse their right of access to the federal courts. The rules designed to discourage groundless litigation are being and will continue to be enforced in this Circuit "to the hilt." *Id.* at 256.

■ Nonetheless there is always a need to avoid chilling the discretion of attorneys in the proper vigorous advocacy of their clients' interests. Therefore, attorneys should only be penalized where they have failed to maintain a minimum standard of professional responsibility, viewed objectively. *Lepucki v. Van Wormer*, 765 F.2d 86, 87 (7th Cir.) (per curiam), *cert. denied*, 474 U.S. 827, 106 S.Ct. 86, 88 L.Ed.2d 71 (1985).

■ Such minimum standard of professional responsibility requires an attorney to make reasonable inquiry into both the factual and legal basis for claims and defenses asserted. *Brown*, 800 F.2d at 172. Counsel must take care before filing a pleading, not merely correct it after the filing. *TCI*, 769 F.2d at 448. However, although Rule 11 requires investigation to precede the filing of a pleading, the Rule does not require investigation to the point

of certainty. *Nemmers v. United States,* 795 F.2d 628, 632 (7th Cir.1986). The time available to investigate may be considered, as where an emergency motion for injunction must be considered. *Van Berkel v. Fox Farm & Rd. Mach.,* 581 F.Supp. 1248, 1250 (D.Minn.1984). When counsel relies on the client's statements to counsel, the Court may consider what attempts were made to corroborate the client's claims so as to avoid "blind reliance on the client." *Southern Leasing Partners Ltd. v. McMullan,* 801 F.2d 783, 788 (5th Cir.1986) (per curiam). In this regard it is relevant whether or not they had a long relationship, because it is more reasonable for counsel to depend on the statements of a longstanding client that has demonstrated prior reliability, than on a client unknown to the attorneys. *Id.* But here there has been no contention of a long attorney-client relationship, and no specified showing of efforts to corroborate what the client told its counsel.

■ Notwithstanding an attorney's sincere belief in the merits of his client's position, that attorney has a duty to ascertain the facts and review the law to determine whether the facts fit within a recognized entitlement to relief or defense. *Brown,* 800 F.2d at 172; *TCI,* 769 F.2d at 446.

■ Rule 11 sanctions may be imposed under authority cited above in four circumstances, namely when (1) a reasonable inquiry of the relevant facts and law was not conducted; (2) the pleading filed was not well grounded in fact, (3) the pleading was not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; or (4) the pleading was interposed for any improper purpose, such as harassment, delay, or an unnecessary increase in cost.

■ Some courts have held that a pleading or motion violates Rule 11 only if the total document is unfounded. *Golden Eagle Distrib. Corp. v. Burroughs Corp.,* 801 F.2d 1531, 1540 (9th Cir.1986) (Rule 11 "permits the imposition of sanctions only when the 'pleading, motion, or other paper' itself is frivolous, not when one of the

arguments in support of a pleading or motion is frivolous."). However, this Court is of course bound by Seventh Circuit authority under which a Rule 11 violation may be found when a single misleading or unfounded statement is pleaded. *Frazier v. Cast,* 771 F.2d 259, 263–65 (7th Cir.1985).

■ Debtor's initial Answer failed to deny any of Mister Donut's allegations contained in its original Motion. Its counsel seemed surprised by the court's ruling that he thereby permitted his client to stand in default of the factual allegations, and also surprised by his burdens under Bankruptcy Code § 362 at the preliminary hearing of a motion to modify stay. In that regard, Debtor's counsel abdicated his affirmative duty to understand the law surrounding the failure to answer the motion or meet his burden under § 362. Such omission is proscribed by Rule 11. *Stewart v. RCA Corp.,* 790 F.2d 624, 633 (7th Cir.1986) (Rule 11 "requires lawyers to think first and file later, on pain of personal liability."). Had Debtor's counsel understood the law in this regard, there would have been one hearing instead of three. His failure to have the Motion before him when he drafted the initial Answer to it only compounded the problem, and did not excuse his failure to answer properly.

■ Mister Donut also argues that Rule 11 sanctions are warranted because of Debtor's Motion to Vacate and Reconsider. Specifically, Mister Donut claims that the oral misrepresentation by Debtor's counsel in court that the rent check cleared when it had not is punishable conduct. Rule 11 on its face, however, reaches only the filing of written pleadings. No Rule 11 violation may be based only upon verbal representations in court, though 28 U.S.C. § 1927 has no such limitation and the oral representation warrants sanctions under § 1927 as discussed hereinbelow.

■ Mister Donut further seeks Rule 11 sanctions on the Motion to Vacate and Reconsider because of Debtor's continued opposition to the Mister Donut Motion to Modify Stay because that opposition was legally indefensible after the subleases had

earlier terminated by action of law on August 31, 1987. Termination clearly had occurred under Bankruptcy Code § 365(d)(4) because no attempt was made by Debtor to assume the leases by that date. Debtor's counsel claims that he reasonably believed at the time that Illinois contract law preempted Federal Bankruptcy law as to lease assignments. It is no defense to sanctions that counsel was unaware of authority that should have been known to a competent attorney. *Hewitt v. Stanton,* 798 F.2d 1230, 1233 (9th Cir.1986). Debtor's counsel argues that his ignorance of the law excuses him. However, "There is no room for a pure heart, empty head defense under Rule 11." Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look,* 104 F.R.D. 181, 187 (1985). Accordingly, Mister Donut's Rule 11 claim must prevail as to Debtor's Motion to Reconsider and Vacate.

◼ Finally, Mister Donut argues that sanctions are appropriate with respect to Debtor's Amended Answer. It contends that Debtor and its counsel did not perform the necessary factual and legal research prior to filing the Amended Answer. Debtor argues that the Amended Answer was drafted in good faith, was reasonably believed to be accurate, and is therefore not condemnable under Rule 11. Nevertheless, it is clear that had Debtor's counsel reasonably investigated into the facts he could have ascertained that (1) Debtor lacked remittance funds; (2) Debtor's check only covered rent; and (3) Debtor never submitted other payments due. A pleading is not well grounded in fact if it is contradicted by uncontroverted evidence that was or should have been known to the attorney or the party signing the filing. *Frazier v. Cast,* 771 F.2d 259, 263–65 (7th Cir.1985); *O'Rourke v. City of Norman,* 640 F.Supp. 1451, 1469–70 (W.D.Okla.1986); *Coburn Optical Indus., Inc. v. Cilco, Inc.,* 610 F.Supp. 656, 659 (M.D.N.C.1985); *Van Berkel v. Fox Farm Rd. Mach.,* 581 F.Supp. 1248, 1249–50 (D.Minn.1984). Further, if Debtor's counsel had reasonably investigated into the law he would have ascertained that the subleases were deemed rejected by August 31, 1987, and that Debtor's rights under those subleases terminated on that date. Debtor was of course the source of false portions of pleadings. Accordingly, Rule 11 sanctions are appropriate as to the Amended Answer against both attorney and client.

◼ Under Rule 11, sanctions are normally imposed against the lawyer, though they may be imposed against the client as well. *Thornton v. Wahl,* 787 F.2d 1151, 1154 (7th Cir.) (per curiam), *cert. denied,* 479 U.S. ——, 107 S.Ct. 181, 93 L.Ed.2d 116 (1986).

◼ Courts impose sanctions on counsel who failed to research applicable law, but not on their clients for such omission. *Wold v. Minerals Eng'g Co.,* 575 F.Supp. 166, 167 (D.Colo.1983) (dictum). In such cases, clients are ordered not to reimburse counsel for the amount sanctioned. *Golden Eagle Distrib. Corp. v. Burroughs Corp.,* 103 F.R.D. 124, 129 (N.D.Cal.1984), *rev'd on other grounds,* 801 F.2d 1531 (9th Cir.1986). Sanctions often fall totally upon a client that is the catalyst behind a frivolous factual pleading. *Chevron, U.S.A., Inc. v. Hand,* 763 F.2d 1184, 1187 (10th Cir.1985). However, where attorney and client share responsibility for litigation that violates Rule 11, then courts impose liability on both jointly and severally. *Monument Builders of Greater Kansas City, Inc. v. American Cemetery Ass'n,* 629 F.Supp. 1002, 1013 (D.Kan.), *amended,* 647 F.Supp. 972 (D.Kan.1986); *Florida Monument Builders v. All Faiths Memorial Gardens,* 605 F.Supp. 1324, 1326–27 (S.D. Fla.1984). Counsel in that instance is not made immune from sanctions merely by following his client's instructions. *In re TCI, Ltd.,* 769 F.2d 441, 446 (7th Cir.1985).

Here, the joint responsibility of both counsel and client is demonstrated by the foregoing discussion.

### Sanctions under 28 U.S.C. § 1927

28 U.S.C. Section 1927 provides:

§ 1927. Counsel's liability for excessive costs. Any attorney or other person admitted to conduct cases in any court of the United States or any Territory there-

of who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

■ The Eighth Circuit recently has doubted whether Bankruptcy Courts have jurisdiction to impose sanctions under 28 U.S.C. § 1927. *Brown v. Mitchell (In re Arkansas Communities, Inc.),* 827 F.2d 1219, 1221 (8th Cir.1987) (holding that a bankruptcy court has jurisdiction under Bankruptcy Rule 9011 to assess fees and sanctions, but not deciding whether a bankruptcy court has such jurisdiction pursuant to § 1927). However, the Seventh Circuit has held that bankruptcy courts may assess attorney's fees as sanctions under both Rule 11 and § 1927. *See generally, In re TCI Ltd.,* 769 F.2d 441 (7th Cir.1985).

The wording of § 1927 has led to some uncertainty as to whether an objective or a subjective standard applies. Objective bad faith has been held sufficient to warrant the imposition of sanctions under 28 U.S.C. § 1927. *Id.* at 445. However, a Seventh Circuit case decided after *TCI* seemed to question whether an objective or subjective standard applies in this Circuit. In *Indianapolis Colts v. Mayor and City Council of Baltimore,* 775 F.2d 177, 182 (7th Cir. 1985) (finding that before a court may assess fees under section 1927, the attorney must intentionally file or prosecute a claim that lacks a plausible legal or factual basis). It has not been shown that Debtor's counsel here intentionally filed or prosecuted his pleadings knowing that they lacked plausible or factual basis.

■ However, under *TCI* and other cases from this and other circuits, an objective standard of bad faith is sufficient to warrant the imposition of sanctions under 28 U.S.C. § 1927. *O'Connell v. Champion Int'l Corp.,* 812 F.2d 393, 395 (8th Cir. 1987); *Haynie v. Ross Gear Div. of TRW, Inc.,* 799 F.2d 237, 243 (6th Cir.1986), *cert. granted,* 481 U.S. ——, 107 S.Ct. 1624, 95 L.Ed.2d 198, *vacated,* 482 U.S. ——, 107 S.Ct. 2475, 96 L.Ed.2d 368 (1987); *Reliance Ins. Co. v. Sweeney Corp. Md.,* 792 F.2d 1137, 1138 (D.C.Cir.1986); *Jones v. Continental Corp.,* 789 F.2d 1225, 1230 (6th Cir.1986). *But see Oliveri v. Thompson,* 803 F.2d 1265, 1273 (2d Cir.1986), *cert. denied sub nom., Suffolk County v. Graseck,* 480 U.S. ——, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987).

■ Therefore, if a lawyer pursues a path that a reasonably careful attorney would have known to be unsound after appropriate inquiry, such conduct is objectively unreasonable and vexatious. *TCI,* 769 F.2d at 445. In other words, a lawyer engages in bad faith by acting recklessly or with indifference to the law, as well as by acting in the teeth of what he knows to be the law. *Id.* A lawyer's reckless indifference to the law may impose substantial costs on the adverse party. *Id.* Section 1927 permits a court to insist that the attorney bear the costs of his own lack of care. *Id.* The Seventh Circuit panel in *TCI* concluded that Rule 11 as now amended sets out a standard that applies equally to § 1927. *Id.* at 447. Therefore, for the same reasons that sanctions must be imposed against Debtor and its counsel pursuant to Rule 11, such will also be imposed under § 1927.

### Computation of Sanctions

Sanctions are therefore imposed pursuant to Rule 11 F.R.Civ.P., Bankr.Rule 9011, and 28 U.S.C. § 1927 against both Debtor and its counsel for the added expense they imposed on Mister Donut by reason of sanctionable conduct.

Movant has demonstrated in its Motion (Ex. 9) a total of 19¼ hours of work by two attorneys for which the remedy of sanctions is sought. Those hours include 11 hours between September 2, 1987 and September 9, 1987, to prepare for and attend the second and third hearings held on those dates; and also 8¼ hours to prepare for and file the instant motion. Respondents have not answered or objected to any of those time entries which therefore stand admitted.

From the Court's experience in passing on upwards of a thousand fee petitions a

year and observation of events related hereinabove and acquaintance with the issues herein it is concluded that:

1. Only one attorney was necessary for all work described, and the work of the second attorney is disallowed.

2. Mr. Martino's billing rate of $135.00/hour is reasonable in the light of his experience and work performed in this case, taking into account rates charged in this community for like work by similarly experienced counsel.

3. Mr. Martino's conferences with others were unnecessary to this effort and are disallowed for sanction purposes. His communications with client are not shown to be directly and solely related to the sanctionable activity, and are disallowed for sanction purposes.

4. The number of hours shown to prepare and present a sanction petition is disproportionately large in the face of hours reasonably required to respond to the sanctionable conduct, particularly in the light of extensive reported authority on sanctions and the fairly routine nature of sanction motions in this District.

5. The time reported September 2, 1987, is 8 hours, and is reduced by one hour to accord with this Court's observation of time directly and necessarily required that day.

6. This litigation was part of and related to ongoing litigation between the parties in state court, as permitted upon the modification of stay by this Court.

7. Considering the foregoing, the time for the period September 2, 1987 through September 9, 1987 is reduced to 9 hours, and that for preparation and presentation of the instant motion is reduced to 4 hours, a total of 13 hours x $135 or a total of $1,755, which sum will constitute the sanction.

Accordingly, Debtor Chicago Midwest Donut, Inc. and its counsel Gary G. Tucker are jointly and severally ordered to pay a sanction of $1,755 to Mister Donut of America, Inc. within 14 days hereof. This case is set on February 19, 1988 at 10:30 A.M. without further notice to enter judgment on this sanction should the sanction not be paid by that date, and for movant to tender such judgment order in that event.