**In re EXCELLO PRESS, INC., Debtor.**

**EXCELLO PRESS, INC., Plaintiff,**

v.

**BOWERS, INC., et al., Defendants.**

**Bankruptcy No. 85 B 13649.
Adv. No. 87 A 907.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Aug. 25, 1989.

Daniel A. Zazove, Towbin & Zazove, Ltd., Chicago, Ill., for plaintiff.

David Schachman, Greenbaum, Browne, Cain & Dolin, Ltd., Chicago, Ill., for defendant, Associated Agencies, Inc., f/k/a Robert M. Schrayer Co.

## MEMORANDUM AND ORDER

THOMAS JAMES, Bankruptcy Judge.

Associated Agencies, Inc., f/k/a Robert M. Schrayer Co., defendant in Count VII of this adversary proceeding, seeks sanctions under Bankruptcy Rule 9011 against Excello Press, Inc., plaintiff, and its counsel, the firm of Towbin & Zazove, Ltd., for their failure to conduct a reasonable inquiry to assure that the proceeding against Associated was well grounded in fact and warranted by existing law. The court is of the opinion that T & Z did not conduct a reasonable inquiry into the facts and law. Associated is entitled to sanctions against the firm. These will be awarded after hearing on an appropriate application.

Bankruptcy Rule 9011 [Fed.R.Civ.P. 11] requires that every adversary proceeding be signed by an attorney and further provides that his signature constitutes a certificate that he has read the adversary proceeding and that to the best of his knowledge, information and belief formed after reasonable inquiry that it is well grounded in fact and warranted by existing law. Violation of this rule subjects the attorney and/or the represented party to appropriate sanctions which may include payment to a defendant of the reasonable expenses incurred because of the filing of the adversary proceeding, including a reasonable attorney's fee.

Excello filed its petition for relief under chapter 11 of the Bankruptcy Code on October 11, 1985 and as debtor in possession is proceeding to liquidate its assets under its liquidation plan. On September 15, 1987, Excello sued Robert M. Schrayer Co., now known as Associated Agencies, Inc., and a number of other trade creditors, to recover certain alleged preferential transfers under Code § 547(b). As for Associated, Excello claimed that it had made three voidable transfers or payments to Associated: one on July 26, 1985 for $3,135.46, another on August 2, 1985 for $2,981.06,

and the last on September 20, 1985 for $5,903.94.

Associated is an Illinois licensed insurance agent. Excello employed Associated beginning in 1983 as a broker to purchase group life and excess medical insurance and as a third party administrator to administer Excello's self-insured portion of its group medical plan. Associated purchased this insurance for Excello from Boston Mutual for the period from February 1, 1985 to February 1, 1986. Excello made monthly payments to Associated for the insurance and the administrative services. Associated would deposit Excello's payments into an escrow account and then pay the insurance premium portions to Boston Mutual.

Code § 547(b) authorizes a debtor to avoid a transfer if five conditions are met. A detailed discussion of these conditions is not necessary to resolve the imposition of sanctions. If these conditions are met and the debtor is not precluded from avoiding the transfer under Code § 547(c), the debtor may under Code § 550(a)(1) recover the property transferred from the initial transferee of such transfer or the entity for whose benefit the transfer was made, for the benefit of the debtor's estate.

The court notes that Code § 547(c)(1) precludes the debtor from avoiding a contemporaneous exchange for new value and Code § 547(c)(2), a transfer in the ordinary course of business. This latter subsection is a statutory codification of the judge-made exception to previous versions of Code § 547(b), i.e., the "current expense" rule. *See Matter of Xonics Imaging, Inc.,* 837 F.2d 763, 766 (7th Cir.1988), and *Barash v. Public Finance Corp.,* 658 F.2d 504, 510–511 (7th Cir.1981).

Excello as noted filed its chapter 11 petition on October 11, 1985 and on September 15, 1987 filed this adversary proceeding against Associated among others. According to T & Z, shortly after commencing this bankruptcy case, Excello retained an accounting firm to do a variety of jobs, including an analysis of "preferential transfers." The accounting firm and Excello decided that the most fair and accurate method of determining the net preferential transfer was an analysis which netted out all new value provided by the transferee subsequent to the transfer. Code § 547(c)(1)(A) prohibited a debtor from avoiding a contemporaneous transfer for new value. Accordingly, the accounting firm made a "new value/preferential transfer" analysis and examined all transfers that Excello made during the 90 days prior to filing its bankruptcy petition, [one of the conditions set forth in Code § 547(b)(4)(A) ], including the three checks made payable to and negotiated by Associated's predecessor. Excello confirmed this analysis by its own investigation.

On July 18, 1988 this court granted Associated's motion for summary judgment as to the first two payments finding that they were in fact made in the ordinary course of business between the parties and were, therefore, not subject to avoidance pursuant to Code § 547(c)(2). The court denied Associated's motion for summary judgment as to the third payment because the court found an issue of material fact as to whether this payment for two months of insurance coverage was made in the ordinary course of business.

Associated moved a second time for summary judgment as to the third payment. The court granted this motion because it found from the additional materials submitted in support of the motion that this payment to Associated was not made to Associated as an initial transferee but as agent of Boston Mutual for whose benefit the payment was made and concluded that Associated was not a transferee liable under Code § 550(a)(1). This court in making its decision followed the requirement in *Bonded Financial Services v. European Amer. Bank,* 838 F.2d 890, 893 (7th Cir. 1988), that a transferee have dominion over or the right to put the money in question to its own purposes. Associated had neither the dominion over nor the right to put the money to its own use. Associated was only an agent.

Associated contends that had T & Z delved into the facts surrounding these transfers sufficiently, the lawyers would

have readily discovered that Excello's first two payments to Associated were made in the ordinary course of business and were therefore not subject to avoidance and further that all payments of the insurance premiums were made to Associated as agent for Boston Mutual. Thus, T & Z should not have sued Associated at all for recovery of the first two payments and should have withdrawn the claim for the third payment upon learning of our circuit's opinion in *Bonded*, 838 F.2d at 890.

■ To determine the standard that the court should use under B.R. 9011 to impose sanctions we are taking the liberty of referring to those opinions of our circuit court discussing the application of Fed.R.Civ.P. 11, after which B.R. 9011 is patterned. There is both a subjective and an objective component to imposition of sanctions under B.R. 9011. *See Mars Steel Corp. v. Continental Bank, N.A.*, 880 F.2d 928 (7th Cir. 1989). The subjective component necessitates an imposition of sanctions when a paper is interposed for an improper purpose, whether it is supported by the facts and the law, and no matter how careful the prefiling investigation. *Id.* at 931. There is no evidence before the court that the adversary proceeding against Associated was interposed for any improper purpose.

The court is, however, of the opinion that T & Z failed as to the objective component. The objective component requires a reasonable inquiry before filing even though the paper is filed in the best of faith, by a lawyer convinced of the justice of his client's cause. *Id.* at 931.

■ How much investigation of the facts and law is required of an attorney to meet the objective component depends on the circumstances of the case. *Id.* at 932–33. In a previous opinion, *Brown v. Federation of State Medical Boards of U.S.*, 830 F.2d 1429 (7th Cir.1987), our circuit court observed (p. 1435) that to determine whether an attorney has made a reasonable inquiry in the facts of an adversary proceeding this court should consider

> whether the signer of the documents had sufficient time for investigation; the extent to which the attorney had to rely on

his or her client for the factual foundation underlying the pleading, motion, or other paper; whether the case was accepted from another attorney; the complexity of the facts and the attorney's ability to do a sufficient pre-filing investigation; and whether discovery would have been beneficial to the development of the underlying facts....

and to determine whether the attorney made a reasonable inquiry into the law this court should consider

> the amount of time the attorney had to prepare the document and research the relevant law; whether the document contained a plausible view of the law; the complexity of the legal questions involved; and whether the document was a good faith effort to extend or modify the law.

To bring an action like that brought against Associated a lawyer must in the court's opinion look not only to the avoiding transfer concepts set forth in Code §§ 547(b) and (c), but also to a transferee's liability set forth in Code § 550(a)(1). As to Code § 547(c) T & Z has mistaken its import. This subsection may give defenses to a creditor as to a Code § 547(b) avoidance action, but more importantly Code § 547(c) imposes a duty on a debtor and his lawyer to make a reasonable investigation as to whether the avoidance of a transfer is prohibited. Certainly, T & Z must have known of the prohibitions in Code § 547(c). To have its client, Excello, hire an accounting firm to analyze contemporaneous transfers for new value required T & Z to have known of the prohibition in Code § 547(c)(1). Indeed, this analysis and Excello's verification of it were the bases for the claims set forth in this adversary proceeding.

■ Having investigated the one should not T & Z have investigated to some degree the prohibition in Code § 547(c)(2) against avoiding ordinary course of business transfers? The answer is yes for lawyers have an obligation not to bring any party into court without first doing the necessary research regarding each and every claim, in-

cluding limitations. *See In re TCI Ltd.*, 769 F.2d 441, 446 (7th Cir.1985).

■ T & Z did not do any factual investigation regarding the payments to Associated and asked no questions to determine what Excello had purchased from Associated, whether Associated was the ultimate beneficiary of the check proceeds, what were the customary billing and payment cycles or what was the ordinary course of business between them.

Information about the course of business was easily available for T & Z supported Excello's cross-motion for summary judgment with the affidavit of Eugene Laster, a former executive vice-president of Excello, who stated that Excello paid Associated's predecessor on a regular basis except for the September 20, 1985 lump sum payment and that this lump sum payment was the only lump sum payment in the year prior to the bankruptcy filing. This court finds that Excello's officers had facts readily at hand to show the ordinary course of business between Excello and Associated. It thus seems that T & Z could have found after reasonable inquiry in those nearly two years before the filing of this adversary proceeding pertinent facts about the course of business between Excello and Associated. It may be that after a reasonable investigation of the ordinary course of business a lawyer might still bring an action and let the court decide what was the ordinary course of business between the parties if a defendant were to defend on the ordinary course of business concept.

Also, the fact search of the ordinary course of business between Excello and Associated would have revealed that Associated was the agent of Boston Mutual. With such knowledge T & Z would have been prepared to apply our circuit's holding in *Bonded*, 838 F.2d at 894, that an agent is not a transferee under Code § 550(a) to the facts at bar. T & Z had the responsibility to stay abreast of any changes in the law during the pendency of this lawsuit. This was not the client's responsibility, but the firm's alone. *In re Chicago Midwest Donut, Inc.*, 82 B.R. 943, 950 (Bkrtcy.N.D. Ill.1988). *See also, TCI*, 769 F.2d at 446.

It is the court's opinion that T & Z should have voluntarily withdrawn Excello's claim against Associated based on the third transfer, within a reasonable time after the Seventh Circuit issued the *Bonded* opinion in January, 1988.

Moreover, and perhaps the most compelling reason to award sanctions, T & Z could not have made a proper determination of whether Associated had given Excello value as to these three payments without knowing what was the business between Excello and Associated. No matter what approach this court takes it arrives at the conclusion that T & Z had to make a reasonable inquiry into the ordinary course of business between the parties before T & Z could file any complaint against Associated. The court concludes that it was not reasonable for T & Z to close its investigation of Code § 547(c) prohibitions with knowledge of facts surrounding only the one prohibition.

Because there has been no suggestion that Excello or anyone else caused T & Z to file the suit, the court finds that T & Z made the decision to seek recovery of these three transfers from Associated and concludes that only T & Z is liable for sanctions.

It is therefore ordered that the motion of Associated Agencies, Inc. f/k/a Robert M. Schrayer Co., defendant, is granted as to the firm of Towbin & Zazove, Ltd., and denied as to Excello Press, Inc., plaintiff. Towbin & Zazove is ordered to pay Associated the costs of defending this adversary proceeding. Associated shall submit a statement of services and expenses incurred in defense of the adversary proceeding on or before September 25, 1989. The court will hold a hearing on the reasonableness of the request on October 5, 1989, at 11:00 a.m.