WEISZHAAR FARMS, INC. and L.J. Hog Co., Inc., Plaintiffs/Appellants

v.

LIVESTOCK STATE BANK, Defendant/Appellee.

Civ. No. 89–1051.

United States District Court, D. South Dakota, N.D.

April 30, 1990.

Curt Ewinger, Rice & Ewinger, Aberdeen, S.D., for plaintiff/appellant Thomas Tobin.

Jean M. Massa, Jensen & Massa, Winner, S.D., for plaintiff/appellant Weiszhaar Farms & L.J. Hog Co.

Robert E. Hayes, Davenport, Evans, Hurwitz & Smith, Sioux Falls, S.D., for defendant/appellant Livestock State Bank.

## MEMORANDUM OPINION

DONALD J. PORTER, Chief Judge.

This is an appeal from a final order of the Bankruptcy Court[1] granting sanctions against appellants Weiszhaar Farms, Inc. and L.J. Hog Co., Inc. (Debtors) and counsel for debtors, Thomas M. Tobin. This Court has jurisdiction to hear this appeal under 28 U.S.C. § 158(a).

After reviewing the factual findings of the Bankruptcy Court and the relevant statutory and case law, this Court concludes that the Bankruptcy Court abused its discretion in granting sanctions against both debtors and their attorney. Debtors were entitled to rely on their attorney with regard to the purely legal issues surrounding multiple filings, it is, therefore, debtors' counsel who should bear responsibility for the Bankruptcy Court's sanction.

### FACTS AND PROCEDURE

In its letter opinion of October 19, 1989, the Bankruptcy Court set forth in detail the relevant facts and procedural history of the debtor farm corporations. It is, therefore, unnecessary to reiterate this background except in a cursory fashion. Debtors filed Chapter 11 bankruptcy petitions on September 2, 1986. After the two cases were administratively consolidated, the disclosure statement and Chapter 11 plan were approved.

A stipulation between the parties provided that debtors would pay appellee Livestock State Bank (Bank) amounts totalling $685,000 by June 25, 1988. This date was subsequently postponed to allow debtors to secure FmHA financing for the final payment. Despite the postponement, debtors were still unable to secure the financing by the amended date.

Pursuant to a "drop dead" clause in the stipulation, the Bankruptcy Court issued an

---

1. The Honorable Irvin N. Hoyt, Chief Bankruptcy Judge, United States Bankruptcy Court for the District of South Dakota.

order on October 17, 1988 directing debtors to surrender all their personal property, including approximately 637 head of cattle, to Bank for liquidation. Bank, on October 21, 1988, took possession of the cattle and delivered them to the Bowdle, South Dakota, salebarn for sale.

On October 24, 1988 the Bankruptcy Court denied debtors' Motion for Stay of Execution of the October 17, 1988 Order Directing the Surrender of Property. Later, on October 31, 1988, Debtors' ex parte motion to modify their Chapter 11 plan and stay the October 17, 1988 Order was also denied by the Bankruptcy Court.

Following the denial of debtors' ex parte motion, Tobin, counsel for debtors, filed a Chapter 12 petition which prevented the sale of the remaining livestock. Bank then was forced to move the livestock 200 miles to another feedlot near Letcher, South Dakota, by midnight that same day. Bank incurred substantial expenses for removing and maintaining the cattle.

The Chapter 12 petition was dismissed by the Bankruptcy Court, on November 8, 1988 where it found that the subsequent filing was made in bad faith and, as stated in its letter opinion, "was an attempt to frustrate the Court's order for surrender of personal property and two subsequent denials of motions to stay the implementation of that order." Armed with the Court's finding, Bank filed a motion for sanctions against debtors and Tobin, pursuant to Bankruptcy Rule 9011, for the costs and expenses it incurred in the mainte-

nance and disposition of the cattle and for attorney's fees in its prosecution of the dismissal of the Chapter 12 case.

The Bankruptcy Court conducted a hearing on this motion, which hearing included presentation of testimony on the issue of expenses and to which both parties submitted post-hearing briefs. The Bankruptcy Court found that the Chapter 12 filing was motivated by an "improper, sanctionable purpose," that is, to circumvent its Order and attempt "to delay the surrender of the livestock to the bank", and awarded Bank its entire costs of $50,777.59. This amount was chargeable to both debtors and Tobin, notwithstanding that Bank had already deducted from the sale proceeds the expenses incurred in the removal and maintenance of the livestock.[2] This appeal followed.

## DISCUSSION

Bankruptcy Rule 9011 was cast from Rule 11 of the Federal Rules of Civil Procedure. *See, e.g., In re Mapson*, 93 B.R. 161, 168 (Bankr.C.D.Ill.1988) and *In re Sowers*, 97 B.R. 480, 481–81 (Bankr.N.D.Ind.1989). Designed to prevent abuses of the bankruptcy process by parties and their attorneys, Rule 9011 provides in pertinent part:

**Rule 9011. Signing and Verification of Papers.**

(a) **Signature.** Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney ... shall be signed by at least one attor-

---

2. In Civil No. 90–1001, the appeal of Tobin from the Bankruptcy Court's order granting sanctions, this Court received a letter dated January 18, 1990 from Curt R. Ewinger, counsel for Tobin. That letter stated that the sanctions order had been satisfied by a state court Judgment awarded to Bank against debtors. The Judgment of Judge Eugene E. Dobberpuhl, of the Fifth Judicial Circuit for the State of South Dakota, provided:

> 2. That Defendant [Bank] have and recover judgment against Plaintiffs [Debtors] in the amount of $278,346.88, plus attorneys' fees and costs in the sum of $555.00, making in all the sum of $278,901.88. As no deficiency was claimed by the Defendant, said judgment shall be in full satisfaction of all indebtedness due from the Plaintiffs, and shall be deemed to

satisfy the obligation of all Plaintiffs herein unto the Defendant for sanctions awarded by the United States Bankruptcy Court for the District of South Dakota, Northern Division.

On February 7, 1990, this Court dismissed without prejudice the appeal in Civil No. 90–1001 pursuant to a stipulation between Tobin's counsel and counsel for Bank. That stipulation relied upon the state court judgment as effectively satisfying the Bankruptcy Court's sanctions order. As a result of the state court's Judgment, Mr. Ewinger felt that both appeals were mooted and that it would be unnecessary to file a reply brief in this appeal. As such, this Court has not been apprised of Tobin's position on any of the substantive issues raised by this appeal.

ney of record in the attorney's individual name.... The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation.... If a document is signed in violation of this rule, the court on motion ... shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

An award of sanctions under Bankruptcy Rule 9011, like its counterpart in the Federal Rules of Civil Procedure, involves a tripartite standard of review.

First, factual findings that form the basis of the asserted violation are reviewed under the clearly erroneous standard. *Kurkowski v. Volcker*, 819 F.2d 201, 203 n. 8 (8th Cir.1987). Second, the determination that a violation of the rule is shown by those findings is a legal conclusion we review de novo. *Id.* Finally, the appropriateness of the sanctions is reviewed for abuse of discretion. *Id.*

*E.E.O.C. v. Milavetz and Associates*, 863 F.2d 613, 614 (8th Cir.1988). Following this simple format, this Court will look first to whether the Bankruptcy Court was clearly erroneous in finding that the filing of the Chapter 12 petition was for purposes of delay.

## I. Abuse of the Automatic Stay

▪ Quite possibly the most significant attribute of filing for bankruptcy and warding off creditors is the automatic stay of 11 U.S.C. § 362. The automatic stay effects a number of goals of the Bankruptcy Code respecting control of creditor ac-

tion. This control implicates the power of the bankruptcy court to protect its jurisdiction over assets of the debtor whether in his possession or in the physical custody of secured creditors. 2 L. King, *Collier on Bankruptcy* ¶ 362.01[1] (15th ed. 1989). Although the bankruptcy courts were solicitous about compromising their jurisdiction over assets in their custody and control, this jurisdiction by injunction, a shield for both the bankruptcy court and debtor, became the debtor's sword when the Code provided that this injunctive power was to be self-executing upon the filing of a bankruptcy petition. And while there is no inherent abuse in availing oneself of the automatic stay, manipulating the judicial process by reimposing the automatic stay through multiple filings works an unconscionable fraud on creditors. *See In re Kinney*, 51 B.R. 840, 844–45 (Bankr.C.D. Calif.1985). Thus an abuse of § 362 occurs when the debtor has no intention of effectuating a realistic plan of reorganization and the bankruptcy court's self-executing injunction results in unnecessary and costly delays. *Id.* Abuse of the automatic stay provision by attorneys and/or their clients mandates imposing the heavy-handed measures provided in Bankruptcy Rule 9011.

▪ The Bankruptcy Court's determination that the successive filing by debtors and their counsel was for the primary purpose of circumventing its October 17, 1988 order and delaying the sale of the remaining livestock by invoking § 362 is not clearly erroneous. Debtors and Tobin twice filed motions to stay the execution of the order directing surrender of the livestock. Following the denial of the second motion, Tobin hastily filed a Chapter 12 petition on that same day. On this point, Tobin made the following statement at the Chapter 12 dismissal hearing:

If the machinery and the livestock are sold, the chattels aren't there to back up the loan, and the cash flows that are required in the application process don't work out, and no loan would be granted. We want to have the chance to get the county committee and the Chapter 12 was filed so that we could have that

chance to reorganize at that time. I don't think that Mr. Weiszhaar or any farm corporation out there in farming should not try to save their farm, should not try any available means through the legal process to save their farm and to exert every ounce of energy in the reorganization effort.

Transcript of Chapter 12 Dismissal Hearing, pp. 18–19 (November 7, 1988) (passage quoted in Brief for Appellees, p. 7 (January 30, 1990)).

Tobin's zeal is laudable, but does not obscure the intent of the successive filing—to frustrate the Bankruptcy Court's order of October 17, 1988 and delay the sale of the livestock by abusive use of the automatic stay.

The Bankruptcy Court also found compelling the argument that the Chapter 12 filing was an attempt to avoid triggering the valid, judicially enforceable "drop-dead" clause contained in the stipulation entered into between the parties. This finding is uncontroverted by the fact of the filing itself.

The final argument concerned the failure of the debtors and Tobin to file a responsive brief on the sanctions hearing as required by Local Bankruptcy Rule 304. Mr. Weiszhaar was not present at the hearing [3] nor was a responsive brief filed by either debtors or their counsel setting forth a proper factual or legal basis for the Chapter 12 filing. Accordingly, no evidence was presented at the hearing disputing Bank's basic contention that the "proceedings were commenced in bad faith for the purpose of delaying and obstructing execution" of the Bankruptcy Court's order and that no "legally supportable basis for their filing" existed.[4] Motion of Livestock State Bank for Sanctions (December 9, 1988). An avoidable combination of miscommunication and neglect essentially forced debtors and Tobin to concede that the successive filing was for the improper purpose of delay by circumventing the Order authorizing the sale of the livestock. The above discussion demonstrates that the Bankruptcy Court's finding of delay as the impetus behind the successive filing was fully supported by the facts.

## II. Violation of Rule 9011

 This Court's inquiry must now turn to whether a dilatory purpose violates

---

**3.** Tobin stated at the sanctions hearing that the failure of his client, Mr. Weiszhaar, to appear was the result of a miscommunication between his office staff and himself. Tobin was apprised of a change in schedule and quickly notified his client. However, Tobin was not notified by his secretary of a subsequent rescheduling of the hearing back to the original March 20, 1989 date and, therefore, failed to relay this information to Mr. Weiszhaar.

**4.** Debtors' violation of Local Rule 304 was not addressed in the letter opinion of the Bankruptcy Court. At the sanctions hearing, however, it was apparent that Judge Hoyt was concerned with Tobin's failure to file the responsive brief within the time specified in Local Rule 304.

> MR. TOBIN: Your Honor, I don't know where the response is, and I would have to go through my file to see. But in any event, I think a matter of this magnitude such as Mr. Hayes has outlined would not require the imposition of that rule. We have appeared in the case and I think the debtors in this case deserve a chance to have their case heard and to present testimony in opposition to Mr. Hayes' testimony if that's necessary. If they are just going to testify as to what figures are, I don't think that's a problem, but if they are going to testify as to the necessity of moving the cattle from one place to the other, I think the testimony would establish that that may not be done. But I don't think that the response in a case like this should be imposed to prevent the debtors from having their day in court, Your Honor.

> THE COURT: Well you know, I didn't manufacture the rules, but the rules are there to be followed by everybody and the rules are there to provide everybody with adequate notice so they can be prepared at a hearing. And it's just exactly to prevent shotgunning somebody when they get here and it's to prevent the delay and it's to prevent the element of surprise. And Rule 304 is very specific and it was reconsidered and amended and became effective without change as to this particular part on March 1, and those were just sent out. And you know, from my observation of this case, many of the problems were because of miscommunication somewhere along the line. So we will proceed with the showing by Mr. Hayes at this time.

Transcript of Hearing on Motion for Sanctions, pp. 6–7 (March 20, 1989).

The Bankruptcy Court allowed Tobin to participate in the cross-examination of Bank's witness, Mr. Boyd D. Hopkins, on the issue of costs, but refused to allow Tobin to brief the matter of the propriety of sanctions.

Rule 9011. The Bankruptcy Court identified the standard of objective reasonableness that measures the conduct in question against the requirements of Rule 9011. *See Milavetz*, 863 F.2d at 615. But this test applies only where the filing was made in bad faith, i.e., without having made a reasonable inquiry that the filing was well grounded in fact or is warranted by existing law or a good faith argument for a change in the law. Because addressing this question is unnecessary to finding that sanctions were warranted, the Bankruptcy Court correctly declined to consider the novel legal theory posited by Tobin.[5]

■ The latter portion of Rule 9011(a) squarely addresses whether a violation occurred. "[T]o cause delay" is specifically listed as an "improper purpose". This subjective component of Rule 9011

> necessitates an imposition of sanctions when a paper is interposed for an improper purpose, whether it is supported by the facts and the law, and no matter how careful the prefiling investigation.

*In re Excello Press, Inc.*, 104 B.R. 924, 927 (Bankr.N.D.Ill.1989).

Cases cited by debtors, *In re Route 202 Corp.*, 37 B.R. 367 (Bankr.E.D.Pa.1984) and *In re Arena*, 81 B.R. 851 (Bankr.E.D.Pa. 1988), are factually distinguishable in that in those cases the petition was not filed in an effort to circumvent an express order of the bankruptcy court authorizing foreclosure pursuant to a stipulation between the parties. Granted each of the filings in those two cases was made on the "eve of a scheduled foreclosure sale", but none involved an express order of the court to surrender property and a refusal to stay execution of that order. The improper purpose in this instance is the delay of the Order of the Bankruptcy Court. Thus, a de novo examination requires an affirmance of the Bankruptcy Court's legal conclusion that the dilatory purpose behind the Chapter 12 filing is an "improper, sanctionable purpose" under Rule 9011. *Id.* The Bankruptcy Court did not err in granting sanctions to Bank under the circumstances of this case.

### III. Imposition of Sanctions Against Debtors and Tobin

■ The final inquiry under *Milavetz* is whether the Bankruptcy Court abused its discretion in sanctioning both debtors and Tobin and whether the amount awarded was excessive. *Milavetz*, 863 F.2d at 614. Before signing the Chapter 12 petition, both debtors and Tobin were required by Rule 9011 to conduct a reasonable inquiry into the law and facts. The prohibition against filing successive bankruptcy petitions is settled law in a number of jurisdictions and was just recently embraced by the court below. *See In re Gerth*, 116 B.R. 170 (Bankr.D.S.D.1989). *See also In re Smith*, 85 B.R. 872 (Bankr.W.D.Ok.1988) (citing *In re Belmore*, 68 B.R. 889, 891 (Bankr.N.D.Pa.1987); *Prudential Insurance Co. v. Colony Square Co.*, 40 B.R. 603 (Bankr.N.D.Ga.1984); and *In re Stahl, Asano, Shigetomi & Associates*, 7 B.R. 181 (Bankr.D.Haw.

---

5. The letter opinion of the Bankruptcy Court reflects a contention made by counsel for debtors that the

> subsequent filing was designed to advocate a new or novel theory, namely that 11 U.S.C. § 1107 does not prevent a Chapter 11 debtor in possession from filing under a different chapter of the Code after a Chapter 11 plan has been confirmed.

Bankruptcy Court Opinion, p. 5 (October 19, 1989). The Bankruptcy Court did not address the novelty of this defense, rather finding that the motivating factor behind the Chapter 12 filing was to delay the sale of the livestock. The court correctly rested on this "improper purpose" as one sanctionable under Rule 9011.

It is, of course, true that nothing in § 1107 expressly prevents a Chapter 11 debtor in possession from filing under a different chapter of the Code after his plan has been confirmed under § 1129. It is also true that § 1107 does not expressly *authorize* a successive filing under another chapter while the Chapter 11 case remains open. Most significantly, though, is the fact that other courts facing this issue have unfailingly and unequivocally held that successive filings under two chapters of the Code frustrate the authority and object of the bankruptcy courts when delay is an accompanying factor. *See, e.g., In re Hill*, 84 B.R. 623 (Bankr. E.D.Mo.1988). As briefly set forth in the Bankruptcy Court's letter opinion, Tobin's reliance on § 1107 is pretextual, with a microscopic chance of overturning existing law on this issue.

1980)). As far as the status of a particular legal issue is concerned, it is the attorney's "responsibility to stay abreast of any changes in the law during the pendency of th[e] lawsuit. This [is] not the client's responsibility, but the [attorney's] alone." *Excello Press*, 104 B.R. at 928. Debtors could not have been expected to know of the Bankruptcy Court's memorandum opinion in *Gerth* which expressly prohibited simultaneous filings under two different chapters of the Code. Nor is it reasonable to impose upon a debtor who has retained counsel the task of researching that issue as addressed by other jurisdictions. In this instance, therefore, the successive Chapter 12 filing was "legally and factually unjustified ... hav[ing] no purpose other than harassment, delay, or increasing the costs of litigation." *In re Sowers*, 97 B.R. 480, 486 (Bankr.N.D.Ind.1989). Furthermore, in carrying out his duty to conduct a reasonable inquiry into the facts which would support the petition, the Court can envision no set of facts of which Tobin was unaware and which debtors misrepresented or failed to disclose.

An examination of the circumstances surrounding the Chapter 12 filing convinces this Court that the decision to proceed was premised upon Tobin's knowledge of the intricacies of bankruptcy law. Debtors' limited familiarity with the Bankruptcy Code and Rules made them incapable, unlike Tobin, of appreciating the ramifications of asserting an unfounded legal position. Notwithstanding that the petition was filed for the "initial and paramount reason" of frustrating the Bankruptcy Court's order and delaying the sale of the remaining livestock, this delay was accomplished by invoking the protective mechanisms of the Bankruptcy Code. Tobin, not the debtors, is required to be familiar with the Code provisions protecting the rights of both the debtor and creditor. Bankruptcy Rule 9011 requires Tobin to respect and safeguard those provisions, not to unreasonably ignore them.

To a farmer debtor unfamiliar with the process of doing battle in bankruptcy, it would not be far-fetched to hypothesize that the debtor would defer to his retained counsel the task of setting legal strategy with the ultimate goal of "saving the farm." While the debtor is responsible for this end, the means with which to accomplish it are necessarily left to his attorney. Ultimately, it is apparent that the decision to prepare and file the Chapter 12 petition in this case was made on the unsubstantiated advice of counsel. As a result, the petition was interposed as a "predatory instrument" which "recklessly create[d] needless costs" for which Bank was entitled to relief. *Sowers*, 97 B.R. at 484.

According to Bank, sanctioning both debtors and Tobin is appropriate in this case because it and the courts should not become the innocent victims of additional delays occasioned by a rift between the debtors and Tobin. But *Hamilton v. Neptune Orient Lines, Ltd.*, 811 F.2d 498 (9th Cir.1987), cited as supporting Bank's contention, involved delays directly attributable to an acute pre-trial breakdown in the attorney-client relationship as a result of blameworthy conduct by both. But, on this record, the Court is not aware of any delay caused by a quarrel between debtors and Tobin prior to the order granting sanctions against both. This argument, then, is without persuasive force.

■ Finally, the Court finds untenable Bank's argument that the award of sanctions against debtors is appropriate because debtors signed the petition under penalty of perjury and they failed to file a responsive pleading to Bank's motion for sanctions. Knowledge of bankruptcy law is not a necessary attribute of two years in the bankruptcy courts. It is entirely reasonable that a layman debtor would not know of the prohibition against multiple filings notwithstanding his active and continued involvement in the case. It is this Court's opinion that the signature of a party represented by an attorney is a certificate that the party has disclosed all known facts of which his attorney should be aware; or the debtor's signature constitutes a certificate that (1) he was fully apprised by his attorney that a particular legal position is meritless, but (2) nonetheless joins in its assertion. Moreover,

Bank would charge debtors with knowledge of Local Bankruptcy Rule 304 and require them to have prepared a responsive pleading in the event retained counsel failed to timely respond. Bank relies on *Reliance Insurance Co. v. Sweeney Corp., Maryland,* 792 F.2d 1137, 1139 (D.C.Cir. 1986), for the proposition that both attorney and client are responsible to see that the required responsive pleading is filed. The client in *Reliance Insurance* was an insurance company acting as surety on a construction contract, and, presumably, more familiar with legal proceedings than debtors in this case. Second, on appeal the client in that case was not seeking to distance itself from the conduct of its attorney. The sentence in that case indicting both attorney and client for failing to respond to the show cause order is dictum and does not persuade this Court that debtors should bear the brunt of the Bankruptcy Court's sanction.

██ This Court agrees with the Bankruptcy Court that $50,777.59 is a reasonable amount in this instance to deter future abuses of the automatic stay. This amount is neither excessive nor oppressive inasmuch as Tobin was aware of the forthcoming sale date and the effect of § 362 on this sale. In addition, based upon the hearing testimony this amount is the actual out-of-pocket cost to Bank, the innocent party in this case, and its payment appropriately rests with the blameworthy party. This Court recognizes that Rule 9011 sanctions "should be sparingly employed so as not to stifle creativity or vigorous advocacy." *In re Arena,* 81 B.R. at 856. But more important in this case is the maxim that "[t]he purpose of Rule 11 is to 'compensat[e] the offended party for the expenses caused by a violation as well as penaliz[e] the offender....'" *Lupo v. R. Rowland and Co.,* 857 F.2d 482 (8th Cir.1988) (citing *Sanctions Under the New Federal Rule 11—A Closer Look,* 104 F.R.D. 181, 201 (1985)). As no alternative sanction could remedy the injury to Bank as a result of the Chapter 12 filing, *see Van Poppenheim v. Portland Boxing & Wrestling Commission,* 442 F.2d 1047 (9th Cir.1971), *cert. denied,* 404 U.S. 1039, 92 S.Ct. 715, 30 L.Ed.2d 731 (1972), the amount ordered to be paid as sanctions in this matter is appropriate.

## CONCLUSION

Accordingly, the Bankruptcy Court's order is affirmed regarding the grant of sanctions against attorney Tobin in the amount of $50,777.59. The order of the Bankruptcy Court imposing sanctions against appellants is reversed.